STEVEN G. KALAR
Federal Public Defender
GRAHAM ARCHER
Assistant Federal Public Defender
55 S. Market Street, Suite 820
San Jose, CA  95113
(408) 291-7753
(408) 291-7399
Graham_Archer@fd.org

Counsel for Defendant ERIC POTRATZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ERIC POTRATZ,<br><br>Defendant. | CR 15-00236 LHK<br><br>DEFENDANT'S MOTION TO EXCLUDE GOVERNMENT EXPERTS' TESTIMONY<br><br><br>Trial Date:  August 11, 2017<br><br><br>**Honorable Lucy H. Koh** |

Defendant Eric Potratz, by and through his counsel, submits the following motion to exclude testimony of government experts that would opine on legal conclusions that should be reserved for the jury.  This motion is based upon the attached memorandum of points and authorities, all files and records in this case, and any further evidence as may be adduced at the hearing on this motion.  Mr. Potratz reserves the right to supplement this motion during the course of trial as needed.

DEF'.S MOT. TO EXCLUDE GOVT. EXPERTS' TESTIMONY
CR 15-00236 LHK

**BACKGROUND**

On June 7 and June 14, 2017, the parties filed in limine motions, pretrial conference statements, witness lists and other pretrial documents.  Trial is scheduled to begin on August 11, 2017.  After in limine motions were filed, the government provided two memoranda from Dr. Arthur Simone, Senior Medical Officer at the Center for Drug Evaluation and Research with the Food and Drug Administration ("FDA").  *See* Exhibits A and B.  Dr. Simone's memos were received by the defense on June 15, 2017.  Additionally, on August 3, 2017, just over a week before trial begins, the defense received a memorandum from government witness Shani Smith, FDA Chemist Reviewer, regarding whether Turinabol-LV contains a dietary ingredient, *see* Exhibit C, and a memorandum from Cara R. Welch concerning the dietary ingredient issue.  *See* Exhibit D.

On June 16 and June 21, 2017, the government gave notice under Rule 16 that it intends to call Dr. Simone and Ms. Smith to testify at trial as experts in their field.  *See* Exhibit E. Govt.'s letters re: expert notice; *see also* Govt. Amended Witness list, docket no. 106.  Dr. Simone will testify that the product AndroHard was a misbranded drug and Turinabol-LV was a prescription drug, among other issues.[1]  Ms. Smith will testify that Turinabol-LV did not contain a dietary ingredient.  *See id.* at 2-3.  Dr. Simone's and Ms. Smith's testimony should be excluded because, to the extent that they seek to testify regarding whether AndroHard meets the legal definition of a misbranded drug under 21 U.S.C. §§ 321(g)(1) and 352, and whether Turinabol-LV meets the legal definition of a "drug" or does not contain a dietary ingredient under the legal definition in 21 U.S.C. §§ 321(g) and (ff), this proposed testimony constitutes impermissible legal conclusions.  Additionally, this testimony should be excluded pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579

---

[1] On August 8, 2017, the government informed defense counsel that it intends to dismiss Count Six, which is the only count involving the product AndroHard.  If this count is dismissed, the exclusion of any testimony concerning AndroHard is irrelevant.

DEF'.S MOT. TO EXCLUDE GOVT. EXPERTS' TESTIMONY

CR 15-00236 LHK

(1993), because these conclusions have not yet satisfied the prerequisites under Rule 702 and *Daubert* to establish a methodology and/or explanation of how they were derived.

## ARGUMENT

I. **Expert Testimony that AndroHard is a "Misbranded Drug" Within the Meaning of 21 U.S.C. §§ 321(g)(1) and 352, That Turinabol is a "Drug" Within the Meaning of 21 U.S.C. § 321(g)(1) and Does Not Contain a "Dietary Supplement" Within the Meaning of 21 U.S.C. § 321(ff) Should be Excluded Because They Are Impermissible Legal Conclusions**

The sweeping conclusions that the government asserts will be made by Dr. Simone and Ms. Smith will improperly usurp the role of the jury as fact-finder. Although "expert testimony concerning an ultimate issue is not per se improper," an expert "cannot give an opinion as to her *legal conclusion*, *i.e.*, an opinion on an ultimate issue of law." *Elsayed Mukhtar v. Calif. State Univ., Hayward*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002) (citations omitted) (emphasis in original), *amended*, 319 F.3d 1073 (9th Cir. 2003). Legal conclusions are impermissible because "'[w]hen an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.'" *Id.* (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (emphasis in *Duncan*)).

The proposed expert testimony regarding whether AndroHard is a "misbranded drug," whether Turinabol-LV is a "new drug" and whether Turinabol-LV contains a "dietary ingredient" and is therefore not a "dietary supplement" would improperly substitute the experts' judgment for the jury's on an ultimate question of law, namely: (1) whether AndroHard is a "misbranded drug" within the meaning of 21 U.S.C. §§ 321(g)(1) and 352; (2) whether Turinabol-LV is a "drug" within the meaning of 21 U.S.C. § 321(g)(1); and (3) whether Turinabol-LV contains a "dietary ingredient" and is therefore a "dietary supplement" within the meaning of 21 U.S.C. § 321(ff). These are questions for the jury, not the government's experts, to decide.

DEF'.S MOT. TO EXCLUDE GOVT. EXPERTS' TESTIMONY

CR 15-00236 LHK

1
2
3
4
5
6

The statutes that govern this area of the law, and the definitions underlying those statutes are particularly complex and open to the jury's interpretation. For instance, the government has submitted a report from Cara Welch outlining the FDA's process for trying to reach these legal conclusions, and it spans eleven single spaced pages, with six subparts. (*See* Exhibit D - Memorandum of Cara Welch, April 7, 2017). It is the responsibility of the jury to make the determinations as to each element of the charged offenses, and

7
8

## II. This Expert Testimony Must Meet the Standards Set Forth Under Rule 702 and *Daubert*

9
10

Rule 702 of the Federal Rules of Evidence sets forth the conditions under which an expert witness can give opinion testimony at trial:

11
12
13
14

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and data, and (3) the witness has applied the principles and methods reliably to the facts of the case.

15
16
17

Fed. R. Evid. 702. "It is the proponent of the expert who has the burden of proving admissibility." *Lust By and Through Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

18
19
20
21
22
23
24
25

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that the trial court must act as the "gatekeeper," to ensure that the expert testimony is not admitted unless "the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id.* at 592. The trial court's evaluation begins with "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93. As the Ninth Circuit has explained, assessing the scientific validity of proposed expert testimony requires district courts to

26
27

> satisfy themselves that scientific evidence meets a certain standard of reliability before it is admitted. This means that the expert's bald assurance of validity is not

DEF'.S MOT. TO EXCLUDE GOVT. EXPERTS' TESTIMONY

28

CR 15-00236 LHK

> enough. Rather, the party presenting the expert must show that the expert's
> findings are based on sound science, and this will require some objective,
> independent validation of the expert's methodology.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir.), *cert. denied*, 516 U.S. 869 (1995). The question is "not the correctness of the expert's conclusion but the soundness of his methodology." *Id.* at 1318. For this reason, it is not enough for an expert to announce his or her conclusions. Rather, experts "must explain precisely how they went about reaching their conclusions and point to some objective source – a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like – to show that they have followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field." *Id.* at 1319 (citation omitted). The proffering party must "explain the methodology the experts followed to reach their conclusions" and "point to [an] external source to validate that methodology." *Id.* Presenting "only the expert's qualifications, their conclusions and their assurances of reliability" is "not enough." *Id.*

Unless the expert informs the court of the principles and methodology employed in reaching his opinions, it is impossible for the court to fulfill its gatekeeping function. For example, the Supreme Court's "non-exhaustive list of factors for determining whether scientific testimony is sufficiently reliable" includes: "(1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential error rate; and (4) whether the theory or technique is generally accepted in the relevant scientific community." *Domingo ex rel. Domingo v. T.K*, 289 F.3d 600, 605 (9th Cir. 2002) (citing *Daubert*, 509 U.S. at 593-94). If the district court does not know what methodology the expert used, there simply is no way for the district court to assess whether that methodology has been tested, whether it has been subjected to peer review, whether there is a known or potential error rate, or whether it is generally accepted in the relevant scientific community.

The proposed expert testimony concerning the misbranding of AndroHard, whether AndroHard and Turinabol-LV are drugs, and whether Turinabol-LV contains a dietary

DEF'.S MOT. TO EXCLUDE GOVT. EXPERTS' TESTIMONY

CR 15-00236 LHK

5

supplement should be excluded unless the methodology of their can be tested as sufficiently reliable. The witnesses "bald assurance of validity is not enough." *Daubert*, 43 F.3d at 1316.

Here, the methodology for determining whether something is a "drug" or "dietary ingredient" appears to be codified as of April 7, 2017 (*See* Exhibit D – Cara Welch Memo), and includes no actual analysis of the substance being considered. Instead, it calls for a series of database searches and legal statutory interpretation, followed by a legal conclusion. For instance, the methodology includes the FDA's own definition of a legal term, "dietary substance," "because the term is not defined in the FD&C Act or by regulation." (*See* Exhibit D, Bates 110167). The memorandum goes on to state that the "FDA interprets the phrase 'dietary substance' to mean a substance commonly used by people as human food or drink." (*Id).* The entire methodology is based on a series of legal conclusions and statutory interpretations.

Ultimately all of the purported "expert testimony" rests on this framework. For instance, none of Dr. Simone's proffered testimony appears to be based on his own experience with the ingredient in question, but instead merely follows the methodology for reaching legal conclusions set forth in the Cara Welch memorandum.

The only portion of Dr. Simone's report that does not merely step through the legal determination process set forth by Ms. Welch is his legal conclusion that the Turinabol-LV product constitutes a "prescription drug." That conclusion should not be permitted for the reasons stated above, but should also be excluded because it does not appear to be based on any actual analysis of the ingredients in Turinabol-LV. First, Dr. Simone sets forth the legal standard for a prescription drug, and then continues on with a series of generalizations that cannot satisfy *Daubert*.

It is clear from Dr. Simone's report that the entire basis for his legal conclusion that the Turinabol-LV product should be considered a prescription drug is generalizations related to other substances, and guesswork based on an absence of information. Other than stating that Turinabol-LV contains an anabolic androgenic steroid (AAS), Dr. Simone includes only

generalized concerns about the possibility that the product could be unsafe. For instance, Dr. Simone states that "[t]he true incidence of AAS-related toxicities is not known, in part due to the lack of clinical trials assessing their safety, self-reported cases of toxicity often lack exact dosing, and the AASs are often used in combination with other products (including other AASs) making it difficult to determine the extent to which a particular AAS contributed to toxicity." (Exhibit B at Bates 107850). Dr. Simone describes side effects as "possible harmful effects," but offers no evidence of any of these effects as they relate to the Turinabol-LV product.

The literature cited by Dr. Simone includes the FDA's own warning, and two articles that performed surveys of reports of adverse events from various AAS. The abstract of one of the articles (Side Effects of AAS Abuse: An Overview) appears to be the source of most of Dr. Simone's conclusory determinations. Neither of these articles address the substances in the Turinabol-LV product, nor the product itself, and neither article stands for the proposition that Dr. Simone seems to advance, which can properly be summed up as "all AASs probably have bad effects, and we can assume that all of them probably have the same bad effects." There is, of course, no literature that would support that conclusion.

After acknowledging that "[t]he true incidence of AAS-related toxicities is not known," Dr. Simone goes on to guess that because "Turinabol-LV is an AAS . . . in the absence of any clinical evidence to the contrary, it would be expected to carry the same risks as other AASs described above." Id. Setting aside the fact that "described above" were only a general list of possible side effects of unidentified AASs, the leap to assuming that Turinabol-LV would share any of those side effects is not grounded in any principle that would satisfy Rule 702 or *Daubert*.

The Court should allow counsel to voir dire the experts outside the presence of the jury to determine if their testimony satisfies Rule 702 and *Daubert*.

1

**<u>CONCLUSION</u>**

2

For the foregoing reasons, Mr. Potratz respectfully requests that the Court exclude Dr.

3

Simone's and Ms. Smith's testimony to the extent that they seek to testify regarding whether

4

AndroHard meets the legal definition of a " misbranded drug" under 21 U.S.C. §§ 321(g)(1) and

5

352; whether Turinabol-LV meets the legal definition of a "drug" under 21 U.S.C. §§ 321(g)(1);

6

and whether Turinabol-LV contains a "dietary ingredient" under 21 U.S.C. 321(ff), this proposed

7

testimony constitutes impermissible legal conclusions.  Additionally, this testimony should be

8

excluded unless the government's experts can satisfy the prerequisites under Rule 702 and

9

*Daubert*.

10

11

Respectfully submitted,

12

13

Dated: August 10, 2017                    STEVEN G. KALAR
                                          Federal Public Defender

14

/S/

15

GRAHAM ARCHER
                                          Assistant Federal Public Defender

16

17

18

19

20

21

22

23

24

25

26

27

DEF'.S MOT. TO EXCLUDE GOVT. EXPERTS' TESTIMONY

28

CR 15-00236 LHK