# Exhibit D

*United States v. Eric Potratz.*
CR 15-00236 LHK



# MEMORANDUM

Title: Research Used to Support Conclusions Regarding the History of an Ingredient's Use in the Food Supply and/or as a Dietary Ingredient, for the Purpose of Making Regulatory Determinations Under Section 201(ff)(1) and (ff)(3)(B) and Section 413(a)(1) and (d) of the Federal Food, Drug, and Cosmetic Act

Name: Cara R. Welch, Ph.D.

Date: April 7, 2017

Issues: What sources of data and information provide a sufficient basis on which the agency can determine whether:

1. An ingredient qualifies as a "dietary ingredient" under section 201(ff)(1) of the FD&C Act (21 U.S.C. 321(ff))?

2. An article that fits into one of the following categories was not before approval, certification, licensing, or authorization marketed as a dietary supplement or as a food: (i) an article that is approved as a new drug under section 505 of the FD&C Act (21 U.S.C. 355), certified as an antibiotic under section 507 of the FD&C Act (21 U.S.C. 357), or licensed as a biologic under section 351 of the Public Health Service Act (42 U.S.C. 262), or (ii) an article authorized for investigation as a new drug, antibiotic, or biological for which substantial clinical investigations have been instituted and for which the existence of such investigations has been made public, unless the Secretary, in the Secretary's discretion, has issued a regulation, after notice and comment, finding that the article would be lawful under the FD&C Act (see section 201(ff)(3)(B) of the FD&C Act, 21 U.S.C. 321(ff)(3)(B))[1]?

3. A dietary supplement contains only dietary ingredients which have been present in the food supply as an article used for food in a form in which the food has not been chemically altered (see section 413(a)(1) of the FD&C Act, 21 U.S.C. 350b(a)(1))?

4. A dietary ingredient was not marketed in the United States before October 15, 1994 (see section 413(d) of the FD&C Act, 21 U.S.C. 350b(d))?

---

[1] For purposes of this memorandum, we hereafter refer to our evaluation of section 201(ff)(3)(B) as the "section 201(ff)(3)(B) exclusion." This memorandum focuses on the determination of whether the substance was not before such approval, certification, licensing, or authorization marketed as a dietary supplement or a food. To determine whether such searches regarding a substance's marketing as a dietary supplement or a food are necessary, CFSAN conducts preliminary searches, as described later this memo, to determine whether the substance may be subject to the section 201(ff)(3)(B) exclusion because, for example, it appears that the substance has been approved as a new drug under section 505 of the FD&C Act.

**BACKGROUND**

Section 201(ff)(1)

Section 201(ff) of the FD&C Act defines "dietary supplement," in part, as "a product (other than tobacco) intended to supplement the diet that bears or contains one or more of the following dietary ingredients: (A) a vitamin; (B) a mineral; (C) an herb or other botanical; (D) an amino acid; (E) a dietary substance for use by man to supplement the diet by increasing the total dietary intake; or (F) a concentrate, metabolite, constituent, extract, or combination of any ingredient described in clause (A), (B), (C), (D), or (E)." Under section 201(ff), to establish that a product is not a dietary supplement because it does not contain a dietary ingredient, FDA must prove a negative—namely, that none of the ingredients in the product fall under any of the categories identified in section 201(ff)(1).

A vitamin (section 201(ff)(1)(A)) is an organic substance that is a minor component of foods, is essential for normal physiological functions (*e.g.*, maintenance, growth, development), is normally not produced within the body in amounts adequate to meet normal physiologic needs, and which causes, by its absence or underutilization, a clinically defined deficiency syndrome.[2,3]

A mineral (section 201(ff)(1)(B)) is a substance of defined chemical composition that provides a form or source of inorganic elements to the diet.[2,3]

An herbal or botanical ingredient (section 201(ff)(1)(C)) is a plant, alga, or fungus; a part of a plant, alga, or fungus (e.g., bark, leaves, stems, roots, flowers, fruits, seeds, berries, or parts thereof); or an exudate (secretion) of a plant, alga, or fungus.[2,4]

An amino acid (section 201(ff)(1)(D)) is a simple organic compound containing both a carboxylic acid (—COOH) and an amino (—$NH_2$) group that combine to form proteins or peptides.[2,5]

For purposes of section 201(ff)(1)(E) of the FD&C Act, FDA interprets the term "dietary substance" in accordance with its common, usual meaning, because the term is not defined in the FD&C Act or by regulation. According to *Webster's II New Riverside University Dictionary*, "dietary" means "of or relating to diet," and "diet" means "an organism's usual food and drink." In conjunction with the words "for use by man," FDA interprets the phrase "dietary substance" to mean a substance commonly used by people as human food or drink. The rest of the definition, which specifies that the substance be for use "to supplement the diet by increasing the total dietary intake," is further evidence that the phrase "dietary substance" is intended to mean

---

[2] See U.S. Food & Drug Administration, Dietary Supplements: New Dietary Ingredient Notifications and Related Issues: Guidance for Industry (2016), available at http://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/UCM515733.pdf.

[3] Webster's II New Riverside University Dictionary  (Anne H. Soukhanov ed., The Riverside Publishing Company 3rd ed. 1994).

[4] The American Herbal Products Association:  Herbs of Commerce.  (Michael McGuffin ed., American Herbal Products Association 2nd ed. 2000).

[5] M Landa, to Marc Ullman, Ullman, Shapiro & Ullman, LLP, responding to Citizen Petition FDA-2009-P-0298 from OVOS Natural Health Inc.  (Center for Food Safety and Applied Nutrition ed., FDA  2011), available at https://www.regulations.gov/document?D=FDA-2009-P-0298-0008.

foods and food components that humans eat as part of their usual diet. One cannot increase the "total dietary intake" of something that is not part of the human diet in the first place.[2,3]

The final category of dietary ingredient is a concentrate, metabolite, constituent, extract, or combination of any ingredient described in section 201(ff)(1)(A), (B), (C), (D), or (E) of the FD&C Act (section 201(ff)(1)(F)).[2,6]

To determine whether an ingredient is a dietary ingredient, FDA reviews various databases and other sources of information related to the ingredient's chemical identity and whether the ingredient is a substance commonly used by people as human food or drink (i.e., with respect to whether the substance is part of the food supply). As a result of this review, FDA may find no evidence regarding the ingredient, it's chemical structure, or whether it is present in the food supply, and thus, would have to rely on the absence of information to establish that an ingredient is not a dietary ingredient.

Section 201(ff)(3)(B):

Section 201(ff)(3)(B) excludes products containing the following articles from the definition of "dietary supplement":

> (i) an article that is approved as a new drug under section 505 of the FD&C Act, certified as an antibiotic under section 507 of the FD&C Act, or licensed as a biologic under section 351 of the Public Health Service Act, or
> (ii) an article authorized for investigation as a new drug, antibiotic, or biological for which substantial clinical investigations have been instituted and for which the existence of such investigations has been made public,
>
> which was not before such approval, certification, licensing, or authorization marketed as a dietary supplement or as a food unless the Secretary, in the Secretary's discretion, has issued a regulation, after notice and comment, finding that the article would be lawful under the FD&C Act.

For purposes of this memorandum, we refer to section 201(ff)(3)(B) as the "section 201(ff)(3)(B) exclusion" and the date of approval, certification, licensing, or authorization the "relevant date."[7] Under the section 201(ff)(3)(B) exclusion, to establish that a product is excluded from the definition of a dietary supplement, FDA must, in part, prove a negative—namely, that any article in the product identified in section 201(ff)(3)(B)(i) or (ff)(3)(B)(ii) was not before the relevant date marketed as a dietary supplement or as a food.[8] To determine whether the section

---

[6] For further information about FDA's Dietary Supplements Subcomittee's interpretation of "metabolite," *see* Hardy, Constance J, Executive Secretary, Dietary Supplements Subcommittee of the FDA Food Advisory Committee). Summary Minutes of March 25, 2003 Meeting of the Dietary Supplements Subcommittee; College Park, MD; dated June 3, 2003, available at http://www.fda.gov/ohrms/dockets/ac/03/minutes/3942m1.pdf.
[7] The process used to determine the relevant date are described in a separate memorandum.
[8] For the exclusion from the definition of dietary supplement in section 201(ff) to apply, FDA must also establish that the Secretary, in the Secretary's discretion, has not issued a regulation, after notice and comment, finding that the article would be lawful under the FD&C Act. While this determination also requires "proving a negative," the

201(ff)(3)(B) exclusion applies, FDA reviews various databases and other sources of information related to whether the ingredient might fall into one of the categories described in section 201(ff)(3)(B)(i) or (ii) of the FD&C Act and, if so, whether and when the ingredient has been marketed as a food or dietary supplement.  FDA may find no evidence of marketing before the relevant date and thus, would have to rely on the absence of information about the marketing of the ingredient to support a finding that the presence of the ingredient in the product excludes the product from the definition of dietary supplement.

Section 413(a)(1)

Section 413(a) of the Federal Food, Drug, and Cosmetic Act (FD&C Act) (21 U.S.C. 350b(a)) deems a dietary supplement which contains a new dietary ingredient adulterated under section 402(f) of the FD&C Act (21 U.S.C. 342(f)) unless it satisfies one of the following:

1. The dietary supplement contains only dietary ingredients which have been present in the food supply as an article used for food in a form in which the food has not been chemically altered.
2. There is a history of use or other evidence of safety establishing that the dietary ingredient when used under the conditions recommended or suggested in the labeling of the dietary supplement will reasonably be expected to be safe and, at least 75 days before being introduced or delivered for introduction into interstate commerce, the manufacturer or distributor of the dietary ingredient or dietary supplement provides the Secretary with information, including any citation to published articles, which is the basis on which the manufacturer or distributor has concluded that a dietary supplement containing such dietary ingredient will reasonably be expected to be safe.

This memorandum explains the processes we use to evaluate whether a dietary supplement containing a new dietary ingredient falls within the meaning of section 413(a)(1).  If a dietary supplement containing a dietary ingredient that is a new dietary ingredient does not meet the requirements of section 413(a)(1) of the FD&C Act, the dietary supplement is subject to the new dietary ingredient notification requirement under section 413(a)(2) of the FD&C Act.

Section 413(d)

Section 413(d) of the FD&C Act (21 U.S.C. 350b(d)) defines a "new dietary ingredient" as "a dietary ingredient that was not marketed in the United States before October 15, 1994, and does not include any dietary ingredient which was marketed in the United States before October 15, 1994."  For purposes of this memorandum, we refer to a dietary ingredient that was marketed before October 15, 1994 as an "old dietary ingredient."

Under section 413(d), to establish that a dietary ingredient is a new dietary ingredient, FDA must prove a negative—namely, FDA must establish that the dietary ingredient was not marketed in the United States before October 15, 1994.  To determine whether a dietary ingredient was not marketed before this date, FDA reviews various databases and other sources of information

---

evaluation of this issue requires solely a review of existing regulations.  This issue is addressed in a separate memorandum.

related to the marketing of the dietary ingredient. FDA may find no evidence of marketing before this date, and thus, would have to rely on the absence of information about the marketing of the dietary ingredient before October 15, 1994, to support a finding that the ingredient is a new dietary ingredient.

## PURPOSE OF MEMORANDUM

This memorandum explains why various databases and other sources of information, included in FDA's review of the marketing of an ingredient and/or use of the ingredient in the food supply, provide sufficient assurance upon which FDA can determine:

1. Whether an ingredient is a dietary ingredient under section 201(ff)(1),
2. Whether the use of an ingredient in a product marketed as a dietary supplement excludes the product from the definition of a dietary supplement under the section 201(ff)(3)(B) exclusion,
3. Whether the ingredient is an article used for food in a form in which the food has not been chemically altered, and
4. Whether an ingredient that is a dietary ingredient was marketed in the United States before October 15, 1994.

It is important for us to identify various resources that we can research that will provide results on which we can rely to make these determinations. Regardless of which of the four above-described analyses is at issue, FDA must make a determination that has regulatory consequences, including possible determinations that a product containing a particular ingredient is adulterated or misbranded because, for example, the product does not meet the definition of a dietary supplement or because a dietary supplement product contains a new dietary ingredient, but the required notification has not been submitted.

At the time the Dietary Supplement Health and Education Act (DSHEA)[9] was enacted—which legislation added, among other provisions, the definition of dietary supplement in section 201(ff) of the FD&C Act and provisions relating to new dietary ingredients in section 413 of the FD&C Act—there were no definitive resources that provided clarification about the applicability of the these provisions, particularly with respect to what dietary ingredients were marketed in the United States, when such ingredients were first marketed, or how FDA should evaluate what ingredients are present in the food supply. Congress did not direct FDA to any specific or definitive resources as a means of evaluating these criteria set forth in sections 201(ff) and 413 of the FD&C Act, and no such definitive resource exists today. Moreover, FDA does not generally have access to marketing records for dietary supplement and conventional food ingredients. Therefore, FDA must determine how to implement the definition of dietary supplement in section 201(ff) of the FD&C Act as well as the standards regarding new dietary ingredients in section 413 of the FD&C Act.

---

[9] Pub. Law 103-417, 108 Stat. 4325 (1994).

**RESOURCES USED**

In determining:

1. Whether an ingredient is a dietary ingredient under section 201(ff)(1),
2. Whether the use of an ingredient in a product marketed as a dietary supplement excludes the product from the definition of a dietary supplement under the section 201(ff)(3)(B) exclusion,
3. Whether the ingredient is an article used for food in a form in which the food has not been chemically altered, and
4. Whether an ingredient that is a dietary ingredient was marketed in the United States before October 15, 1994,

FDA (1) evaluates the chemical identity of the ingredient, (2) researches information about patents that may pertain to the substance, (3) reviews available scientific literature pertaining to the ingredient, (4) researches available information in dietary ingredient databases, (5) reviews numerous food databases regarding the potential use of the ingredient in the food supply, and (6) searches drug databases relating to potential applicability of the section 201(ff)(3)(B) exclusion.[10] FDA considers the results of our research using the following resources, when the results are combined, to provide the most complete information regarding the chemical structure of the ingredient, if the ingredient is present in the food supply (and, if so, when it came into use), and whether a dietary ingredient has been marketed in the United States (and, if so, when marketing began). Further information about these resources and why they would likely provide sufficient supporting information upon which to base a regulatory determination regarding a product's status is provided below.

### 1. Chemical identity of the ingredient

Information about the chemical identity of the ingredient is needed to establish a definitive list of search terms to use in the databases/sources described below, as well as to provide information about which, if any, of the prongs of the definition of dietary ingredients under section 201(ff)(1) the ingredient might satisfy. Information about the chemical identity of the ingredient may also be necessary to provide information about the sourcing and processing of the ingredient as well as whether the ingredient may be chemically altered.

Our process begins by establishing a list of preliminary search terms based on the name of the ingredient and any known chemical synonyms. Depending on the information available, this initial list may ultimately be expanded to include other synonyms/related ingredients that are uncovered during the initial searches.

After developing a list of search terms (and after updating the list of search terms, as needed), we search established chemistry resources for identity information based on the ingredient name in question. These resources include the Merck Index[11] and ChemIDplus.[12] We also search

---

[10] Note that not all of these steps are conducted for each ingredient under evaluation. The searches are limited to those factors relevant to the evaluation at issue.

[11] O'Neil, Maryadele J. et al. (2006, 2012). The Merck Index - An Encyclopedia of Chemicals, Drugs, and Biologicals (14th Edition - Version 14.9). Merck Sharp & Dohme Corp., a subsidiary of Merck & Co., Inc..

Pubmed[13] and GoogleScholar[14] for insight into the chemical identity and extraction or manufacturing information of chemical compounds. If the ingredient name provided is not consistent with or similar to established chemistry nomenclature, initial searches should be done on internet search engines (e.g., Google, Yahoo) for possible synonyms. In order to fully evaluate the ingredient, key information that may be compiled for the ingredient in question includes:

- List of the synonyms for the ingredient.
- The ingredient's chemical structure.
- Other ingredients to which the ingredient is structurally similar, if applicable.
- Other details important to the sourcing or processing of the ingredient.

2. **Patent information**

To obtain additional information about the chemical identity of the ingredient and whether and when the ingredient has been marketed as a dietary ingredient or otherwise been present in the food supply, we search the website of the U.S. Patent & Trademark Office[15] (USPTO) using the search terms established based on the process described in the "Chemical identity of the ingredient" section, above. The USPTO database includes all patents issued by the United States from 1790 to the present; however, only those issued from 1976 to current are provided in their full-text form, as it was printed on the day of issue.[16] The data is updated regularly, and the date of last update is listed on the search page. Patents that are identified as applicable to the ingredient in question can provide insight into the chemical identity, extraction and manufacturing information of chemical compounds, or marketing information.

3. **Search of available scientific literature**

To obtain additional information about the chemical identity of the ingredient at issue as well as information about whether and when the ingredient has been marketed as a dietary

---

Online version available at:
http://www.knovel.com/web/portal/browse/display?_EXT_KNOVEL_DISPLAY_bookid=1863&VerticalID=0. The Merck Index contains over 10,000 monographs with information relating to compounds of significance in research, commerce, and environmental impact. It has been in publication since 1889 and is the definitive reference work for scientists and professionals looking for authoritative information on chemicals, drugs, and biologicals.

[12] The website of ChemIDplus at the National Library of Medicine is as follows: http://chem.sis.nlm.nih.gov/chemidplus/. ChemIDplus is a dictionary containing over 400,000 chemical records, more than 300,000 of which include chemical structures.

[13] The website of PubMed at the National Library of Medicine is as follows: https://www.ncbi.nlm.nih.gov/pubmed. PubMed comprises more than 27 million citations for biomedical literature from MEDLINE, life science journals, and online books. PubMed citations and abstracts include the fields of biomedicine and health, covering portions of the life sciences, behavioral sciences, chemical sciences, and bioengineering.

[14] The website for GoogleScholar is as follows: https://scholar.google.com/. GoogleScholar is an index of journal and conference papers, theses and dissertations, academic books, pre-prints, abstracts, technical reports, and other scholarly literature from all broad areas of research.

[15] The website for USPTO is as follows: http://patft.uspto.gov/netahtml/PTO/search-bool.html.

[16] Further changes to patent documents after the day of issue that are contained in Certificates of Correction and Re-examination Certificates are not included in the searchable full-text of the patent databases, but are available as additional full-page images at the end of each patent's linked full-page images (see http://patft.uspto.gov/netahtml/PTO/help/notices.htm).

ingredient or has otherwise been present in the food supply, we search of available scientific literature using the search terms established based on the process described in the "Chemical identity of the ingredient" section, above. To conduct searches of scientific literature, FDA relies on Pubmed and GoogleScholar, which may provide insight into the chemical identity, extraction and manufacturing information of chemical compounds, and marketing information. If no information is found in the scientific literature, FDA may rely on internet search engines (e.g., Google, Yahoo) to find additional, relevant information about the ingredient upon which to base further searches (e.g., further information about the use of the ingredient in the marketplace).

4. **Search of dietary ingredient databases**

To obtain additional information about ingredients that have previously been marketed as dietary ingredients or that have been subject to a new dietary ingredient notification, we search the following dietary ingredient databases to obtain information about the identity, extraction and manufacturing information of chemical compounds, and marketing information. This information helps to provide a date of marketing for a dietary supplement. While these databases do not provide a composite list of all substances used as dietary ingredients, the databases below provide extensive information about ingredients available in the marketplace and represent the best available resources.

   A. United Natural Products Alliance's (UNPA) "Old Dietary Ingredient (ODI) List": This list is a compilation of Old Dietary Ingredient lists from trade associations that include UNPA, the American Herbal Products Association, the Council for Responsible Nutrition, and the National Nutritional Foods Association. While FDA has not independently verified the status of the products identified in these lists, such lists provide some evidence as to whether a dietary ingredient was marketed in the United States prior to October 15, 1994. The presence of a specific dietary ingredient on this list provides some evidence that the ingredient is not a new dietary ingredient, unless there is additional evidence demonstrating otherwise.[17]

   B. New Dietary Ingredient Notification (NDIN) internal database: A search of FDA's internal "Regs and Review Table" Microsoft Access database provides information about whether an NDI notification has been submitted to FDA for the ingredient. The entire form of each NDIN is searched. If a notification is found that concerns the ingredient, it may provide information relating to the identity, extraction or manufacturing information of chemical compounds, and marketing information since these are all aspects of a thorough NDIN. This published information, on the ingredient or product, could be used to provide a date of marketing for a food or dietary ingredient.

---

[17] For example, as noted in the NDI Draft Guidance, cited previously, FDA has identified certain substances on these lists with which FDA disagrees about the ingredient's status as an old dietary ingredient.

5. **Searches of food databases relating to potential use of the ingredient in the food supply**

To obtain additional information about past and current use of an ingredient in the food supply, we search numerous food databases using the search terms established based on the process described in the "Chemical identity of the ingredient" section, above. This published information, on the ingredient or product, could be used to provide information about the use of the ingredient in the food supply as well as a date of marketing for a food or dietary supplement. While there is no database that provides a composite list of all substances present in the food supply, the databases below provide extensive information about ingredients available in the marketplace and represent the best available resources. If no information is found in the food databases, FDA may rely on internet search engines (e.g., Google, Yahoo) to find relevant information about the marketing of the ingredient in the food supply.

>   A. FDA's Everything Added to Food in the U.S. (EAFUS) List: This inventory[18] of ingredients provides information about ingredients added directly to food that FDA has either approved as food additives or listed or affirmed as generally recognized as safe ("GRAS"). This inventory has not been updated since 2013.
>
>   B. FDA's Generally Recognized as Safe Inventory (GRAS): This inventory[19] provides information about GRAS notices filed with FDA since 1998, when FDA received its first GRAS notice. This inventory is updated approximately monthly by FDA.[20]
>
>   C. Code of Federal Regulations (CFR): We search Title 21 of the Code of Federal Regulations CFR[21] for information regarding whether the substance is a direct food additive, a food contact substance, and other information pertaining to the substance at issue. If information about the ingredient at issue is found, we review the information in the CFR to determine whether it establishes that an ingredient is used in food or dietary supplements and whether it provides information about the date of marketing.
>
>   D. Label Insight by Food Essentials (food and ingredient database): Label Insight[22] is a consumer packaged goods product database of 250,000 + labels including food, cosmetics, dietary supplements, and infant formulas. The database encompasses more than 17,000 brands, totaling 80 percent of U.S. retail food and beverage sales volume.

---

[18] The website of the EAFUS inventory is as follows: http://www.accessdata.fda.gov/scripts/fcn/fcnNavigation.cfm?rpt=eafusListing.
[19] The GRAS inventory is available at http://www.accessdata.fda.gov/scripts/fdcc/?set=GRASNotices.
[20] Note that the GRAS Inventory does not include information about ingredients for which the manufacturer has self-determined to be GRAS and not filed with FDA.
[21] The CFR is available in electronic format at http://www.ecfr.gov/cgi-bin/ECFR?page=browse.
[22] The website for Label Insight is as follows: https://www.labelinsight.com/.

E. United States Department of Agriculture (USDA) Food Composition Databases: The USDA Agricultural Research Service's Food Composition Databases[23] facilitates searches of the USDA Food Composition Databases, which include the USDA National Nutrient Database for Standard Reference (SR) and the USDA Branded Food Products database. Also included in the SR are data from the USDA Database for the Isoflavone Content of Selected Foods, the USDA Database for the Flavonoid Content of Selected Foods, and the USDA Database for the Proanthocyanidin Content of Selected Foods. The USDA Branded Food Products Database is the result of a Public-Private Partnership, whose goal is to enhance public health and the sharing of open data by complementing the USDA National Nutrient Database for Standard Reference (SR) with nutrient composition of branded foods and private label data provided by the food industry. The submission of data to the USDA Branded Food Products Database is voluntary.

6. **Searches of drug databases relating to potential applicability of the section 201(ff)(3)(B) exclusion**

To obtain information about whether the presence of a substance in a product might exclude the product from qualifying as a dietary supplement under section 201(ff) (i.e., whether the section 201(ff)(3)(B) exclusion might apply), we search drug and clinical trial databases using the search terms established based on the process described in the "Chemical identity of the ingredient" section, above. If we discover preliminary information suggesting that the section 201(ff)(3)(B) exclusion may apply, we refer the matter to FDA's Center for Drug Evaluation and Research for further evaluation. This information should be compared to any identified date of marketing for a food or dietary supplement determined based on other searches described elsewhere in this memo.

A. Document Archiving, Reporting, and Regulatory Tracking System (DARRTS) database: This database internal to FDA is an integrated system designed to manage the drug regulatory process through the tracking of various record types and their respective components: applications, safety issues, meetings, and master files.

B. Drugs@FDA | FDA Approved Drug Products: Drugs@FDA[24] includes most of the drug products (FDA-approved brand name and generic prescription and over-the-counter human drugs and biological therapeutic products) approved since 1939. The majority of patient information, labels, approval letters, reviews, and other information are available for drug products approved since 1998.

C. The Orange Book | *Approved Drug Products with Therapeutic Equivalence Evaluations*: The publication *Approved Drug Products with Therapeutic*

---

[23] The website for the USDA Food Composition Databases is as follows: https://ndb.nal.usda.gov/ndb/search/list. As of March 2017, the database included more than 180,000 foods.
[24] The website for Drugs@FDA is as follows: http://www.fda.gov/drugsatfda.

110175

*Equivalence Evaluations* (commonly known as the Orange Book)[25] identifies drug products approved on the basis of safety and effectiveness by the FDA under the FD&C Act and related patent and exclusivity information.

D. Clinicaltrials.gov: ClinicalTrials.gov, a service of the U.S. National Institutes of Health, is a registry and results database of publicly and privately supported clinical studies of human participants conducted around the world. The information on this registry is provided and updated by the sponsor or principal investigator of the clinical study. Studies are generally submitted when they begin, and the information on the site is updated throughout the study. In some cases, results of the study are submitted after the study ends. ClinicalTrials.gov does not contain information about all clinical studies conducted in the United States because not all studies are required by law to be registered (for example, observational studies and trials that do not study a drug, biologic, or device).

## **Conclusion**

Researching the relevant resources described above provide sufficient assurance about:

1. Whether an ingredient is a dietary ingredient under section 201(ff)(1),
2. Whether the use of an ingredient in a product marketed as a dietary supplement excludes the product from the definition of a dietary supplement under the section 201(ff)(3)(B) exclusion,
3. Whether the ingredient is an article used for food in a form in which the food has not been chemically altered, and
4. Whether an ingredient that is a dietary ingredient was marketed in the United States before October 15, 1994.

Information about the chemical identity of the ingredient, whether and when the ingredient has been present in the food supply, and whether and when the ingredient has been marketed as a dietary ingredient is likely to be found in one or more of these resources, which represent a cross-section of activities related to research, regulatory review, and the sale of the ingredient. If our searches of these resources identifies no information about the use of the ingredient as a dietary ingredient, its chemical structure, or its presence in the food supply generally, we consider the lack of such information to support FDA's determination with respect to whether ingredient has been marketed as a dietary ingredient or whether the ingredient has been present in the food supply.

---

[25] The website for searching the Electronic Orange Book is as follows: http://www.accessdata.fda.gov/scripts/cder/ob/default.cfm.

110176